## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by and among, on the one hand, Benjamin Sasoon and Marga Celado, individually and on behalf of all others similarly situated (the "Plaintiffs") and on the other hand, Postmates, Inc. (the "Defendant"), intending that this Litigation shall be fully and finally compromised, settled and released, and that this Litigation shall be dismissed with prejudice, as to all Parties upon the terms and conditions set forth herein.

WHEREAS, Plaintiffs filed a lawsuit against Defendant, entitled *Jordan Niles, Bianca Tsolias, Benjamin Sasoon, and Marga Celado, on behalf of themselves and all others similarly situated, Plaintiffs, v. Postmates, Inc.*, *Defendant*, which was filed in Suffolk County Superior Court, Massachusetts, Case No. 1784CV02025, and was removed by Defendant to the United States District Court, District of Massachusetts, and denominated as Case No. 1:17-cv-11397-JCB (the "Litigation");

WHEREAS, Jordan Niles and Bianca Tsolias voluntarily dismissed their claims in order to proceed with arbitration based on the fact they had entered into a mandatory arbitration agreement with Defendant.

WHEREAS, Plaintiffs assert a claim against Defendant for alleged nonpayment of tips under the Massachusetts Tips Act;

WHEREAS, Defendant has denied, and continues to deny the allegations asserted by the Plaintiffs in the Litigation;

WHEREAS, the Parties have stipulated that, for purposes of the Litigation, Plaintiffs were, and continue to be, properly classified as independent contractors, not employees of Defendant;

WHEREAS, any actions or payments made pursuant to this Settlement Agreement are made solely for purposes of settlement and are not to be construed as any admission of liability or unlawful conduct on the part of Defendant, and Defendant denies any such liability or unlawful conduct;

WHEREAS, Plaintiffs and Defendant desire fully and finally to resolve the Litigation and any and all other claims or disputes, whether known or unknown, that have been made or could have been made by or on behalf of the Plaintiffs against Defendant relating to conduct or events as alleged in the Complaint occurring at any time prior to and including the date on which this Settlement Agreement is executed; and

WHEREAS, the Plaintiffs represent that no other charges, actions, or claims are pending on their behalf against the Defendant, other than the Litigation.

## I.     BACKGROUND

### 1.     Named Plaintiffs' Allegations.

On June 27, 2017, Plaintiffs Jordon Niles, Bianca Tsolias,[1] Benjamin Sasoon, and Marga Celado filed a class action Complaint in the Massachusetts Superior Court alleging that Postmates failed to pay to Couriers the total proceeds of certain fees, including "Delivery Fees," charged to customers, arguing that such fees are akin to tips and that such a practice violates the Massachusetts Tips Law, M.G.L. c. 149, § 152A.

On August 25, 2017, the Plaintiffs stipulated that they were properly classified as independent contractors for the purposes of this litigation as there was a pending settlement in the Northern District of California that turned, at least in part, on the employee/independent contractor dispute.  See Singer v. Postmates (15-cv-01284-JSW).

---

[1] On February 6, 2018, Plaintiffs Niles and Tsolias, who were previously dismissed from the Litigation in order to proceed in arbitration, agreed to a settlement of their claims against Defendant.  Their claims, therefore, are not part of this Agreement.

2

The Plaintiffs further stipulated that their claim was based solely on Plaintiffs' claim that, as independent contractors, Plaintiffs and other putative class members using the Postmates mobile application to provide delivery services in Massachusetts were eligible to receive tips under the Massachusetts Tips Act.

### 2.    Defendant's Defenses.

Postmates denies the Plaintiffs' allegations.  As an initial matter, Postmates denies that the delivery and service fees at issue are gratuities as defined under the Massachusetts Tips Act. Postmates contends that the delivery and service fees are not charged to customers in lieu of a tip because customers are expressly prompted to leave a tip.  Postmates further contends that, as independent contractors, Plaintiffs lack standing to bring a claim under the Massachusetts Tips Act.  Finally, Postmates contends that, even if independent contractors could bring such a claim, the Plaintiffs' claim here is preempted by the Federal Aviation Administration Authorization Act ("FAAAA") because, as independent drivers, Plaintiffs are motor carriers, and the FAAAA forbids any state from enacting or enforcing a law "related to a price, route or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).

### 3.    Relevant Procedural History.

On June 28, 2017, Plaintiffs filed suit in Suffolk County Superior Court in Massachusetts. On July 28, 2017, Defendant removed the case to the United States District Court, District of Massachusetts.  On August 25, 2017, the Parties entered into a Joint Stipulation agreeing that, despite the existence of a class action settlement of an independent contractor misclassification case that was pending in the Northern District of California, which Defendant contended covered and released Plaintiffs' claims asserted here, Defendant would allow Plaintiffs to proceed with

the Litigation provided Plaintiffs agreed that, for purposes of the Litigation, Plaintiffs were properly classified as independent contractors, and not misclassified as employees (thus, the claims were not premised on an alleged misclassification as they had been in the California action). The Parties further stipulated to a dismissal of the claims brought by named plaintiffs Jordan Niles and Bianca Tsolias, who agreed to proceed with their claims in arbitration pursuant to the mandatory arbitration claim in which the entered with Defendant.

After informally exchanging relevant documentation and information on potential damages, on November 3, 2017, the Parties participated in a mediation with Massachusetts-based mediator Mark Irvings, an experienced class action mediator. The Parties were unsuccessfully in resolving the dispute that day.

With Court approval, the Litigation was stayed for a period of time pending the United States Supreme Court's decision in three consolidated cases, Epic Systems Corp. v. Lewis, Ernst & Young, LLP v. Morris, et al., and National Labor Relations Board v. Murphy Oil USA, Inc., Docket No. 16-285 (hereinafter referred to collectively as "Epic Systems"), which addressed the lawfulness of including class action waivers in employment agreements. After Epic Systems was decided (holding that class action waivers are lawful), the stay was lifted and, on July 16, 2018, Defendant filed a Motion to Dismiss on the following grounds: (1) delivery and service fees under the circumstances of the case were not tips or gratuities; (2) as independent contractors, Plaintiffs lack standing to bring a claim under the Massachusetts Tips Act; and (3) Plaintiffs' claim is preempted by the FAAAA.

While Defendant's Motion to Dismiss was pending, the Parties entered into further settlement discussions with mediator Mark Irvings and, on or about August 8, 2018, the Parties reached resolution of the dispute.

## II.    INADMISSIBILITY OF SETTLEMENT AGREEMENT

Except for purposes of settling this Action and obtaining judicial approval of said settlement pursuant to the terms of this Agreement, neither the Settlement, nor any of its terms, nor any document, statement, proceeding or conduct related to this Agreement (including without implication of limitation this Agreement itself or any drafts thereof), nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to any of the Parties, including, without implication of limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession, damage and/or amount of damage.

## III.    SETTLEMENT CLASS

For purposes of this Settlement, the "Settlement Class" will consist of (a) Named Plaintiffs, and (b) all third-party independent delivery professionals/couriers who delivered food or goods in Massachusetts for Postmates from June 27, 2014 to the date of preliminary approval of this Settlement, and who did not sign an arbitration agreement with Defendant. Each member of the Settlement Class shall be referred to herein as a "Class Member," and collectively as "Class Members."

## IV.    BENEFITS OF SETTLEMENT TO CLASS MEMBERS

The Settlement Agreement will provide a substantial monetary settlement to all Class Members.  In addition, the Plaintiffs recognize the expense and length of the proceedings necessary to continue the litigation against Defendant through trial and through any possible appeals.  The Plaintiffs also have taken into account the uncertainty and risk of the outcome of further litigation, particularly in light of the defenses raised by Defendant, the potential for documents, data and testimony elicited through discovery, and the difficulties and delays

inherent in litigation. Based on the foregoing, the Plaintiffs have determined that the Settlement set forth in this Settlement Agreement is a fair, adequate and reasonable settlement, and is in the best interests of the Class Members.

The Plaintiffs are represented by James D. Livingstone, Esq. and John P. Regan, Esq. (collectively, Plaintiffs' Counsel). Plaintiffs' Counsel has conducted an investigation into the facts, including speaking with witnesses, and obtaining and analyzing extensive documents and data from Postmates relating to potential liability and damages. Plaintiffs' Counsel have also thoroughly researched numerous legal issues pertaining to liability and damages in this Action. Based on their investigations and evaluations, Plaintiffs' Counsel is also of the opinion that the Settlement with Postmates is fair, reasonable, adequate and in the best interest of the Class in light of all known facts and circumstances, including the risks of significant delay, defenses asserted by Postmates, the risks involved with damages analysis and modeling and uncertainties regarding class certification.

## V.    DEFENDANT'S REASONS FOR SETTLEMENT

Defendant has concluded that the defense of this litigation would be protracted and expensive for all Parties. Absent Settlement, Defendant will be required to devote substantial amounts of time, energy and resources to the defense of the claim the Plaintiffs have asserted and to vindicate its pay practices, which Defendant maintains have at all times been proper and lawful. Defendant, therefore, has agreed to settle in the manner and upon the terms set forth in this Settlement Agreement to put to rest the claims as set forth in the Action.

## VI.    SETTLEMENT TERMS

NOW, THEREFORE, IT IS HEREBY AGREED, by and among the Plaintiffs on behalf of themselves and the Settlement Class on the one hand, and Defendant on the other hand, and subject to the approval of the Court, that the Action hereby be compromised and settled pursuant

6

to the terms and conditions set forth in this Settlement Agreement and that upon approval of the Court (as set forth below) a judgment shall enter in the Action dismissing it with prejudice, subject to the recitals set forth herein which by this reference become an integral part of this Settlement Agreement and subject to the following terms and conditions:

1.      **Effective Date.**

As used in this Settlement Agreement, "Effective Date" means the date by which this Settlement is finally approved as provided herein and the Court enters a final order entering judgment dismissing the Action with prejudice ("Final Order").

2.      **Released Parties.**

As used in this Settlement Agreement, "Released Parties" shall mean Defendant and all of Defendant's past or present subsidiaries, parent companies, affiliates, divisions, corporations and other entities in common control, successors or assigns, and all past and present officers, directors, shareholders, partners, members, agents, insurers and reinsurers, employees, attorneys, advisors, accountants, representatives, trustees, heirs, executors, administrators, predecessors, successors or assigns of any of the foregoing entities referred to in this paragraph (all of whom are expressly deemed to be third party beneficiaries of this Agreement).

3.      **Class Release.**

As of the Effective Date, all Class Members will be deemed to have forever discharged and released, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, the Released Parties from all Released Claims.  As used in this Settlement Agreement, "Released Claims" shall mean any and all claims, demands, causes of action and liabilities of any kind whatsoever (upon any legal or equitable theory, whether contractual, common law or statutory, under federal, state or local law or otherwise), of Class Members whether known or unknown, arising from, based on, connected with or related to acts, omissions,

facts, circumstances, and occurrences alleged in the Class Action Complaint during the Class Period, including claims asserted or that could have been asserted in the Litigation arising from, based on, connected with or related to any of the foregoing, including but not limited to claims under the Massachusetts Tip Act and other applicable federal and state wage statutes.

**4.      Plaintiffs' Release.**

In addition to the Released Claims identified above, as of the Effective Date, the Plaintiffs will be deemed to have forever discharged and released the Released Parties from any and all claims, known and unknown, asserted or unasserted, which they have or may have against the Released Parties as of the Effective Date, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, The Americans With Disabilities Act, The ADA Amendments Act, The Equal Pay Act, The Lilly Ledbetter Fair Pay Act, the Family and Medical Leave Act, The Worker Adjustment and Retraining Notification Act ("WARN"), The Employee Retirement Income Security Act ("ERISA"), The Massachusetts Fair Employment Practices Law (M.G.L. c. 151B), The Massachusetts Equal Rights Act, The Massachusetts Equal Pay Act, the Massachusetts Privacy Statute and/or The Massachusetts Civil Rights Act, The Massachusetts Payment of Wages Act (Massachusetts General Laws Chapter 149 section 148 and 150), The Massachusetts Minimum Fair Wage Law (Massachusetts General Laws Chapter 151 section 1A and 1B), The Massachusetts Domestic Violence Leave Act (Mass. Gen. Laws. C. 149 section 52E), The Massachusetts Sick Leave law (Massachusetts General Laws Chapter 149 section 148C), The Massachusetts Meal Break Law (Massachusetts General Laws Chapter 149 sections 100 and 101), all as amended.  Notwithstanding the foregoing and notwithstanding any terms or provision to the contrary in this Settlement Agreement, Named Plaintiffs do not release or waive any claims that may not be released or waived unless otherwise allowed by state and/or federal law.

## 5.     Non-Admission of Liability

In entering into this Agreement, Defendant does not admit, and specifically denies, that it has violated any federal, state, or local law; violated any rules, regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract; violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful, improper or wrongful conduct with respect to the Settlement Class.  Neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendant of any such violations or failures to comply with any applicable laws.  Except as necessary in a proceeding to enforce and/or approve the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Defendant.  Additionally, except as necessary in a proceeding to enforce and/or approve the terms of this Agreement, this Agreement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable laws.

## 6.     Settlement Fund

The total settlement payment to be made by Postmates under this Settlement Agreement is Eighty-Five Thousand Dollars and No Cents ($85,000.00) (the "Settlement Fund").  Postmates shall pay the Settlement Fund to the Claims Administrator (as defined in Section VI(7)) within 10 days after entry of the Preliminary Approval Order, at which time the Claims Administrator will deposit the Settlement Fund.  Under no circumstances will Postmates be required to pay more than Eighty-Five Thousand Dollars and No Cents ($85,000.00) in connection with this Settlement. The Parties agree that this is a non-reversionary settlement payment.

The Parties agree, subject to Court approval, that the Settlement Fund shall be apportioned as follows:

a.  Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees incurred by them in an amount not to exceed Twenty-Eight Thousand Three Hundred and Thirty-Three Dollars and Thirty-Three Cents ($28,333.33), which equals One-Third (1/3) of the Settlement Fund.  Subject to Plaintiffs' Counsel's compliance with the terms of this Agreement, Postmates will not oppose such application. Plaintiffs' Counsel will also apply to the Court for costs and expenses not to exceed $1,600.00.  Subject to Plaintiffs' Counsel's compliance with the terms of this Agreement, Postmates will not oppose such application.  These fees and costs are included in, and shall come from, the Settlement Fund.  Plaintiffs' Counsel shall provide the Claims Administrator with appropriate IRS Forms W-9.  In the event that the Court approves a lesser sum for attorneys' fees and costs than requested by Plaintiffs' Counsel, this Settlement Agreement shall remain fully enforceable and Plaintiffs' Counsel shall receive only those attorneys' fees and costs as approved by the Court, and the difference shall be added to the Net Settlement Fund described below.  Except as provided in this Paragraph, upon final approval, each Party shall bear his/her/its own attorneys' fees, costs, and expenses incurred in the prosecution, defense, and settlement of the Action.

1.  The payment of the fees and costs award to Plaintiffs' Counsel shall constitute full satisfaction of the obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or costs in the Action incurred by any attorney on behalf of the Class Members, and shall

relieve the Released Parties and the Settlement Fund of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses or costs to which any of them may claim to be entitled which arise out of the allegations in Plaintiff's Complaint.  In exchange for such payment, Plaintiffs' Counsel will remise, release and forever discharge any attorneys' lien on the Settlement Fund.

b. Plaintiffs will apply to the Court for an incentive award of two thousand five hundred dollars and zero cents. ($2,500.00) to Mr. Sasoon and two thousand five hundred dollars and zero cents. ($2,500.00) to Ms. Celado.  These incentive awards are for Mr. Sasoon and Ms. Celado's extensive services and efforts prosecuting this Action (which will be more fully-detailed in their application), and for assuming the risks associated with this Action.  Subject to Plaintiffs' compliance with the terms and conditions of this Agreement, Postmates will not oppose such application.  In the event that the Court approves a lesser sum for incentive payments than requested by Plaintiffs, this Settlement Agreement shall remain fully enforceable and Plaintiffs shall receive only the incentive payments as approved by the Court, and the difference shall be added to the Net Settlement Fund described below.

c. The Parties shall set aside two thousand five hundred ($2,500.00) to cover the costs of administering this settlement.  If any portion of this amount remains after 120 calendar days following the final distribution of settlement monies, such remaining amount shall be donated to Greater Boston Legal Services Employment

Unit.  If the actual costs for administering the settlement exceeds this amount, the additional amounts shall be deducted from the Settlement Fund described above.

d.  The "Net Settlement Fund" shall be the Settlement Fund less the amounts of attorneys' fees, costs, incentive awards, and claims administration costs described in VI.6(a) through (c) as finally approved by the Court.  The Net Settlement Fund shall be divided to pay individual settlement payments as set forth in this Agreement.  Postmates will not be required to pay more than the Net Settlement Fund to any Class Members in connection with payments to the Class Members.

e.  The Net Settlement Fund shall be divided among the Participating Class Members (defined below) using a formula (detailed below) designed to allocate the Net Settlement Fund proportionately to each relevant Class Member pro rata based on the number of deliveries made by the Class Member during the Class Period, with each Class Member to receive a minimum payment of FIFTY DOLLARS ($50.00).  This allocation is designed to provide a fair settlement to the class.  The Claims Administrator will be responsible for calculating the Class Member Payments using the following formula:

(A)  Using pay and delivery data received from Defendant and audited by Plaintiffs' Counsel ("Payroll Data"), the Claims Administrator will determine the total amount of deliveries performed by each Participating Class Member during the Class Period (the individual's "Gross Class Period Deliveries"), then adding each Class Member's Gross Class Period Deliveries together to yield a Total Class Period Deliveries;

(B) The Claims Administrator will determine what percentage each individual Participating Class Members' Gross Class Period Deliveries is of the Total Class Period Deliveries for <u>all</u> Participating Class Members;

(C) That percentage will be multiplied by the Net Settlement Fund to yield a distribution Amount.

Notwithstanding the results of the foregoing calculations, each Class Member will receive a minimum share of the Net Settlement Fund equal to FIFTY DOLLARS ($50.00). To the extent any Class Member receives the minimum share, the difference between that Class Member's calculated share (which must be less than $50.00) and the minimum share will be deducted, pro rata, from all other Class Member's shares.

All payments will be reported as income for the Participating Class Member on a Form 1099.

**7.    Claims Administration.**

The Parties have selected Rust Consulting to administer this Settlement (the "Claims Administrator"). The Claims Administrator, with the assistance of the Parties, shall administer the Settlement in accordance with the procedures set forth in this Agreement, and shall complete such other tasks as the Parties mutually agree or the Court orders to be performed in the administration of the Settlement.

The Claims Administrator shall hold the Settlement Fund in escrow until distribution as provided in the Settlement Order and Judgment. The Settlement Fund shall remain the property of Postmates until it is distributed in the manner provided in the Settlement Order and Judgment; provided, however, that any tax liability arising out of interest earned by the Settlement Fund shall be considered an out-of-pocket cost to be paid out of the Settlement Fund.

8.    **Procedure for Settlement Implementation.**

The Parties agree to the following procedures regarding the implementation of the Settlement.

a.  Within 21 days after the Parties execute a copy of this Agreement, the Parties shall file a joint motion asking the Court to approve conditional certification of a class consisting of the Class Members solely for purposes of the Settlement, to schedule a Final Approval Hearing, and to approve the Settlement Notice in a form substantially identical to <u>Exhibit A</u> (the "Joint Motion").  If the Court denies the Joint Motion, the Parties agree to make reasonable efforts to obtain the Court's certification of the class and approval of the Settlement Notice, including by filing additional joint motions for preliminary approval of the Settlement.

b.  Within 7 days after the Court allows the Joint Motion, Postmates will provide the Claims Administrator a list of all Class Members, and their last known addresses and email addresses, and the Parties will provide the Claims Administrator a copy of the Settlement Notice as approved by the Court.

c.  Within 45 days after the Court allows the Joint Motion, the Claims Administrator shall send the Settlement Notice approved by the Court to all Class Members, via First Class regular U.S. mail and email, using the most current mailing addresses and email addresses presently available to Defendant.

d.  The Settlement Notice shall include instructions on how a Class Member may object to the Settlement, the procedure by which the Settlement Fund will be distributed, and the amounts to be sought as an Incentive Award and a Fee Award.

e.  Any Settlement Notices returned to the Claims Administrator by the Postal Service with a forwarding address shall be re-mailed by Claims Administrator within five (5)

14

business days following receipt of the returned mail by Claims Administrator.  If any Settlement Notice is returned to Claims Administrator without a forwarding address, Claims Administrator shall undertake reasonable efforts to search for the correct address and shall promptly re-mail the Settlement Notices to any newly-found addresses.

f.  If any person contacts any of the Parties before thirty (30) days following the date on which the Claims Administrator mails the Settlement Notice to the Class Member (the "Objection Deadline"), claiming that he or she should have been sent a Settlement Notice and should be entitled to participate in the Settlement, that person shall be instructed to submit his or her position in writing to Plaintiffs' Counsel and Defendant's Counsel, together with any documents or other evidence in support of such position.  Counsel for the Parties shall be promptly notified of any dispute and given access to any documents or other evidence that any person submits in support of his or her position with respect to the dispute.  The Parties shall then attempt to resolve the dispute.

g.  Each Settlement Award to be issued to each Class Member shall be allocated to the claim asserted in the Litigation for unpaid tips.  Defendant will report the Settlement Award to each Class Member on an IRS Form 1099.

h.  After the first business day five (5) days after the Court enters an order of Final Approval of this settlement (the "Effective Date"), and solely for purposes of this Agreement, the claims administrator will distribute funds in accordance with the terms outlined in paragraph 6.

i.  Each Class Member will have 120 calendar days from the date on which the

settlement payments are issued to negotiate his or her settlement check(s), and each check shall bear a legend stating that the check shall be void after 120 days. If any settlement check is not negotiated in that period of time, that settlement check will become void. Any individual settlement payments or portions thereof which remain unnegotiated 120 calendar days following the mailing of the settlement payment shall be deemed unclaimed. In such event, those Class Members will be deemed to have irrevocably waived any right in or claim to a settlement payment, but the Settlement Agreement and release of claims contained therein nevertheless will be binding upon them.

j. Neither Defendant, Defendant's counsel, Plaintiffs, nor Plaintiffs' Counsel shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks. Without limiting the foregoing, in the event a Class Member notifies the Claims Administrator that he or she believes that a settlement check has been lost or stolen, the Claims Administrator shall promptly stop payment on such check. If the settlement check in question has not been negotiated prior to the stop payment order, the Claims Administrator will issue a replacement check, from which the fees associated with the stop payment order will first be deducted. The Class Member will have an additional forty-five (45) calendar days to negotiate the re-issued check from the date of re-mailing. If any settlement check is not negotiated in that period of time, that settlement check will be voided.

k. If there remains any residual from the Settlement Fund after all payments are made under this Agreement because settlement checks are not cashed within one-hundred

twenty (120) calendar days after issuance, the residual shall revert to Greater Boston Legal Services Employment Unit.

**9.      Opt-Outs.**

Any class member other than the Plaintiffs may elect to opt-out, or be excluded from, the settlement class.  To be effective, any such election must timely comply with the procedures set forth in the Settlement Notice.  Plaintiffs, Postmates and counsel for both Parties agree not to encourage any Class Members to opt out of the settlement.  Any Class Member who timely requests exclusion in compliance with these requirements:

a.      shall not have any rights under this Agreement;

b.      shall not be eligible to receive a settlement allocation; and

c.      shall not be bound by this Agreement, the Final Approval Order, or the Judgment.

**10.      Binding Effect on Class Members.**

Except for those Class Members who exclude themselves in accordance with the procedures set forth in the Settlement Notice, all Class Members (i) will automatically be deemed to be members of the final settlement class for all purposes and be eligible for a settlement allotment under this Agreement, (ii) will be bound by the terms and conditions of this Agreement, the Final Approval Order, the Judgment, and the release set forth herein, and, (iii) except as provided in Section 11, *infra*, will be deemed to have waived all objections and opposition to the fairness, reasonableness, and adequacy of the settlement.

**11.      Procedure for Objecting to Settlement.**

The Settlement Notice shall provide that Class Members who wish to object to the Settlement with instructions that they must file any objection with the Court and serve on counsel for the Parties a written statement objecting to the Settlement.  Such written statement

and all supporting briefs or other materials must be filed with the Court and served on counsel for the Parties no later than the Objection Deadline.  No person shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to the Settlement, and no written objections or briefs submitted by any person shall be received or considered by the Court at the Final Approval Hearing, unless such written statement of objections and supporting materials are timely filed and served as set forth herein.  Persons who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.  Persons who are not Class Members may not object to the Settlement.

### 12.    Questions and Disputes.

In the event that questions or disputes arise regarding the entitlements of the Plaintiff or any Class Member under this Agreement, Defendant shall provide to Plaintiffs' Counsel and/or the Court all reasonably available information reasonably necessary to allow the Parties or the Court to resolve them.

### 13.    No Interference or Retaliation.

(a)    Defendant shall not take any action intended to interfere with any Class Member's attempt to receive his or her Settlement Award.  Defendant shall not take any adverse employment action against any Class Member because any of them (a) instituted or in any way participated in this Litigation or (b) elects or indicates an intention to object to the Settlement memorialized in this Settlement Agreement or to any order entered by the Court approving its terms.

(b)    Nothing in this Agreement limits, restricts or in any other way, (i) affects the Plaintiffs communicating with the Securities and Exchange Commission,  or (ii) prohibits the

18

Plaintiffs from filing a charge or complaint with, or participating in any investigation or proceeding conducted by, the National Labor Relations Board, Equal Employment Opportunity Commission, or a comparable federal, state or local agency; provided, however, that the Plaintiffs hereby agree to waive their right to recover monetary damages or other individual relief in any charge, complaint or lawsuit filed by the Plaintiffs or by anyone else on their behalf before the Equal Employment Opportunity Commission or any comparable state or local fair employment practices agency, except where such a waiver of individual relief is prohibited.

14.    **Covenants of Plaintiffs and Plaintiffs' Counsel**

The Plaintiffs and Plaintiffs' Counsel agree that they will not directly or indirectly issue a press release, hold a press conference, publish information in any form of media, including, without limitation, on any website or social media outlet, or otherwise publicize the Action, this Settlement, this Agreement or its terms, or the negotiations leading to this Agreement, except in accordance with this Agreement or as necessary to effectuate this Settlement.  To the extent the Plaintiffs and/or Plaintiffs' Counsel have publicized the Action, this Settlement, this Agreement or its terms, or the negotiations leading to this Agreement, on any website or social media outlet, the Plaintiffs and/or Plaintiffs' Counsel will take all reasonable steps to delete that publication. If contacted by any member of the media regarding the Action, this Settlement, this Agreement or its terms, or the negotiations leading to this Agreement, the Plaintiffs and Plaintiffs' Counsel will decline to offer any comment other than to say that "the matter has been resolved."

Plaintiffs' Counsel agree not to use the Action, this Settlement, this Agreement or its terms, or the negotiations leading to this Agreement, in any advertisements, marketing materials, articles, publications, or educational materials, except as stated in this Section.

15.    **Defendant's Legal Fees.**

All of Defendant's legal fees, costs and expenses in this Litigation shall be borne by

Defendant.

### 16.    Administration Costs.

The parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the cost and expenses incurred in such process.

### 17.    Nullification of the Settlement Agreement.

In the event:  (a) the Court does not finally approve the Settlement as provided herein; (b) the Court does not certify a class consisting of the Class Members for purposes of the Settlement; (c) the Court does not enter the Settlement Order and Judgment as provided herein which becomes final as a result of the occurrence of the Effective Date; or (d) the Settlement does not become final for any other reason, this Agreement shall be null and void *ab initio* and any order or judgment entered by the Court in furtherance of this Settlement, including class certification, shall be treated as withdrawn or vacated by stipulation of the Parties.  In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed.

In the event an appeal is filed from the Settlement Order and Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.  The Parties agree that if the Settlement provided for herein is not approved by the Court, then no class will be deemed certified as a result of this Settlement.  Defendant's agreement to certification for settlement purposes shall be without prejudice to Defendants' ongoing opposition to the certification of any class for purposes of trial in the Litigation in the event that the Settlement is not approved by the Court.

18.    **Exhibits and Headings.**

Any Exhibits to this Settlement Agreement are an integral part of the Settlement.  The descriptive headings of any paragraphs or sections of this Settlement Agreement are inserted for convenience of reference only and do not constitute a part of this Settlement Agreement.

19.    **Interim Stay of Proceedings.**

The Parties agree to hold all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, in abeyance.  In this regard, the Parties stipulate that until the Settlement is either approved fully or nullified, neither party need serve or respond to discovery, or serve/file responsive pleadings, motions, or oppositions.

20.    **Amendment or Modification.**

This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

21.    **Entire Agreement.**

This Settlement Agreement and any attached Exhibits constitute the entire agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents, except any agreements regarding confidentiality between Postmates and the Plaintiffs, which shall remain in full force and effect in accordance with their respective terms.  Each of the Parties acknowledges that he, she, or it has not relied on any promise, representation or warranty, express or implied, not contained in this Agreement.

22.    **Authorization to Enter Into Settlement Agreement.**

Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Settlement Agreement and to take all appropriate action

required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Settlement Agreement.  The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of mediator Mark Irvings, Esq. to resolve such disagreement, before submitting any disputes to the Court.  The persons signing this Settlement Agreement on behalf of Defendant represent and warrant that they are authorized to sign this Settlement Agreement on behalf of Defendant.

### 23.    Binding on Successors and Assigns.

This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, executors, administrators, heirs and legal representatives of the Parties hereto, as previously defined.

### 24.    Governing Law.

All terms of this Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the Commonwealth of Massachusetts without regard to its principles of conflict of laws.

### 25.    Counterparts.

This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

26.     **This Settlement is Fair, Adequate, and Reasonable.**

The Parties warrant and represent they have read this Settlement Agreement and that they believe this Settlement is a fair, adequate, and reasonable settlement of this Action and have arrived at this Settlement in arms' length negotiations with the assistance of a mediator, taking into account all relevant factors, present and potential.

27.     **Disputes and Jurisdiction of Court.**

The Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Settlement Agreement and all orders and judgments entered in connection therewith.

28.     **Cooperation and Drafting.**

Each of the Parties has cooperated in the drafting and preparation of this Settlement Agreement.  Hence, in any construction of the terms of this this Settlement Agreement, the terms shall not be construed against any of the Parties.

29.     **Invalidity of Any Provision.**

The Parties to this Settlement Agreement agree that each and every provision of this Settlement Agreement shall be deemed to be contractual and that they shall not be treated as mere recitals at any time or for any purpose.  Before declaring any provision of this Settlement Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Settlement Agreement valid and enforceable.

30.     **Waiver of Right to Object.**

By signing this Agreement, the Parties agree to be bound by the terms herein and further

agree not to object to any of the terms of this Agreement.  Any such objection shall therefore be void and of no force or effect.

IN WITNESS WHEREOF, the Parties and their counsel have executed this Agreement as of the date first set forth below.

Dated: _____, 2019          BENJAMIN SASOON


_____

Benjamin Sasoon

[Signatures continue on next page]

Dated: _____, 2019          MARGA CELADO


_____

Marga Celado

Dated: _____, 2019          THE EMPLOYEE RIGHTS GROUP LLC


By: _____

James D. Livingstone, Esq., Plaintiffs' Attorney

Dated: _____, 2019          POSTMATES, INC.


                                        By: _____

                                        Robert Rieders, General Counsel


Dated: _____, 2019          LITTLER MENDELSON, P.C.


                                        By: _____

                                        Michael Mankes, Esq., Defendant's Attorney


Firmwide:156834748.2 078219.1045